UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

AVON NURSING AND REHABILITATION et al.,

       Plaintiffs,

  -v-                                                                                               No. 18 CV 2390-LTS-SDA

ALEX M. AZAR II, Secretary of the United States Department of Health and Human Services,

       Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiffs, a group of thirty-one skilled nursing facilities, bring this action seeking pre-enforcement review under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. (the "APA"), of a final rule promulgated by the Centers for Medicare and Medicaid Services ("CMS"), a division of the Department of Health and Human Services ("HHS"), which permits investigative surveys of nursing facilities that are initiated in response to complaints to be conducted without the participation of a registered nurse. See Survey Team Composition, 82 Fed. Reg. 36530, 36623-36625 (Aug. 4, 2017) (the "Final Rule"). Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' Second Amended Complaint (docket entry no. 23, the "SAC") for lack of subject matter jurisdiction. (Docket entry no. 25.) Plaintiffs oppose Defendant's motion and seek summary judgment on the merits of their APA claim. (Docket entry no. 31.) Defendant cross-moves for summary judgment dismissing Plaintiffs' APA claim on the merits. (Docket entry no. 39.) The Court has considered carefully the submissions of the parties in connection with the instant motion practice and the brief amicus

curiae filed by the American Health Care Association, New York State Health Facilities Association, Alabama Nursing Home Association, Georgia Health Care Association, and Kentucky Association of Health Care Facilities (docket entry no. 47).  For the following reasons, Defendants' motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction is granted, and the parties' respective cross-motions for summary judgment are denied as moot.

## BACKGROUND

The following recitation of relevant facts is drawn from the SAC, including exhibits incorporated therein by reference.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  Where relevant, the Court has also drawn upon the factual declarations submitted by the parties in connection with Defendant's Rule 12(b)(1) motion.  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

Plaintiffs are nursing facilities located in New York or Rhode Island.  (SAC ¶¶ 11-44.)  All Plaintiffs participate in both the Medicare and Medicaid programs.  (Docket entry no. 27, Reinersten Decl. ¶ 6.)  Medicare Part A provides payment to eligible individuals for the cost of hospital and related post-hospital nursing home and home health services.  42 U.S.C. §§ 1395c–1395i-5. Medicaid is a state-administered program that provides payments for medical care to individuals whose income and resources fall below certain limits.  42 U.S.C. § 1396d(a).  Medicare and Medicaid both provide coverage to certain eligible individuals for care provided in a nursing home.  42 U.S.C. §§ 1395x(h), 1396a(a)(28), 1396d(a)(4).

Nursing homes must meet certain participation requirements in order to receive payments under Medicare and Medicaid. 42 U.S.C. § 1395i-3; 42 U.S.C. § 1396r. To continue participating in Medicare and Medicaid, facilities must remain in "substantial compliance" with each program's requirements for participation. 42 U.S.C. § 1395i-3(a)(3), (b)-(d); 42 U.S.C. § 1395r(a)(3), (b)-(d); 42 C.F.R. Part 483.[1] To assess compliance with Medicare participation requirements, CMS enters into agreements with state survey agencies to conduct surveys of nursing facilities. 42 U.S.C. § 1395aa; 42 C.F.R. § 488.10.[2] 42 U.S.C. § 1395i-3(g)(2), which is titled "Surveys," prescribes, among other things, the timing, content, and frequency of several different types of surveys. 42 U.S.C. § 1395i-3(g)(2)(E)(i) provides that "[s]urveys under this subsection shall be conducted by a multidisciplinary team of professional (include a registered professional nurse)." Plaintiffs argue in their motion for summary judgment that this staffing provision applies to investigative surveys conducted in response to complaints that a nursing home has violated the program requirements for participation in Medicare and Medicaid.

After a survey is completed, the state survey agency provides a certification of substantial compliance or noncompliance to CMS. 42 C.F.R. §§ 488.11, 488.12. If necessary, the certification will include a "statement of deficiencies" and will identify the scope and severity of the deficiency. 42 C.F.R. § 488.404(b). Based upon the state survey agency's recommendations, CMS determines whether a facility is eligible to participate in Medicare and, on the basis of any noncompliance found during a survey, CMS may terminate a facility's

---

[1] The participation requirements under Medicaid are substantially similar to those under Medicare. Thus, compliance with Medicare requirements "shall be considered to be the fulfillment of the corresponding requirements or obligations" under Medicaid, and vice versa. See 42 U.S.C. § 1395i-3(j); 42 U.S.C. § 1396r(j); 42 C.F.R. § 488.452(e).
[2] State survey agencies also certify compliance for those facilities participating in Medicaid, with the exception of state-owned nursing facilities, which are surveyed and certified by CMS. See 42 U.S.C. § 1396r(g)(1)(A); 42 C.F.R. § 488.330(a)(1)(i).

Medicare or Medicaid provider agreement or apply alternative remedies instead of, or in addition to, termination procedures. 42 C.F.R. § 488.12; 488.330(b). Alternative remedies include, among other things, the imposition of a civil money penalty, the denial of payment for new admissions, and the appointment of temporary management. 42 U.S.C. § 1395i-3(h)(2)(B); 42 C.F.R. § 488.406.

HHS provides for the administrative appeal to an Administrative Law Judge ("ALJ") of any "initial determination" by CMS, including a "finding of noncompliance leading to the imposition of enforcement actions."[3] 42 C.F.R. § 498.3(b)(13); 42 C.F.R. § 498.5(b); 42 C.F.R. § 488.408(g)(1). An ALJ's decision may be appealed to the Appellate Division of the Departmental Appeals Board (the "DAB"). 42 C.F.R. § 498.80. The DAB's decision is binding unless a party "has a right to judicial review and timely files a civil action in a United States District Court or, in the case of a civil money penalty, in a United States Court of Appeals." 42 C.F.R. § 498.90(a)(1).

On August 19, 2013, Plaintiff Avon Nursing and Rehabilitation ("Avon") reported to the New York State Department of Health ("NYSDOH") that a resident had spilled a bowl of soup on her lap during dinner, resulting in a burn. (SAC ¶ 85.) On September 6, 2013, in response to that report, NYSDOH conducted an abbreviated standard survey at Avon. (SAC ¶ 86.) The survey team did not include a registered nurse. (SAC ¶ 87.) The September 6, 2013, survey concluded, and CMS agreed, that Avon was not in substantial compliance with two participation requirements obligating Avon to ensure that the "resident environment remains as free of accident hazards as is possible" and to investigate thoroughly all incidents involving

---

[3] Decisions imposing civil money penalties may also be reviewed administratively. See 42 U.S.C. § 1395i-3h(2)(B)(ii); 42 U.S.C. § 1320a-7a(c)(2).

allegations of neglect.  (Reinertsen Decl. ¶ 9, Ex. B.)  CMS imposed a civil money penalty, which Avon appealed to an ALJ.  (SAC ¶¶ 92-93.)

On August 2, 2016, the ALJ issued a decision finding that the state agency had violated section 42 U.S.C. § 1395i-3(g)(2)(E)(i)[4] of the Social Security Act and 42 C.F.R. § 488.314(a)(1) by permitting a survey team without a registered nurse to conduct the September 2013 survey.  (Docket entry no. 20-2, the "ALJ Decision" at 16.)  The ALJ further concluded that "the findings and conclusions of the survey team, which was constituted in violation of the [Social Security] Act and regulations, are invalid and cannot be the bases for the imposition of any enforcement remedy."  (Id.)

CMS appealed the ALJ Decision, and the DAB vacated the decision on November 6, 2017.  (Docket entry no. 20-5, the "DAB Decision.")  The DAB concluded that, "[e]ven if NY[S]DOH violated a statutory or regulatory directive concerning the composition of its survey team, the ALJ erred in overturning CMS's noncompliance determination and remedy on that basis."  (Id. at 10.)  Beginning with the statutory text of 42 U.S.C. § 1395i-3, the DAB observed that nothing in that section "support[s] the proposition that CMS's enforcement authority is conditioned on a state agency's compliance with survey-performance requirements." (Id.)  Citing 42 C.F.R. § 488.318(b), 42 C.F.R. § 488.320(b), and its own prior decisions, the DAB noted that "inadequate survey performance does not relieve a [skilled nursing facility] . . . of its obligation to meet all requirements for program participation or invalidate adequately documented deficiencies."  (Id. at 11 (internal quotation marks omitted).)  Thus, because the ALJ

---

[4]  As the DAB noted on appeal, some parts of the ALJ Decision state that the absence of a registered nurse on the September 2013 survey team violated 42 U.S.C. § 1395i-3(g)(2)(C) of the Social Security Act, however, this reference to 42 U.S.C. § 1395i-3(g)(2)(C) appears to be erroneous, as the relevant requirement is found in 42 U.S.C. § 1395i-3(g)(2)(E)(i).  (See docket entry no. 20-5, the "DAB Decision" at n.9.)

failed to consider whether the evidence presented by the parties at the hearing substantiated CMS's noncompliance determination, the DAB remanded the appeal for a decision "addressing, at a minimum, whether Avon was in substantial compliance with 42 C.F.R. §§ 483.13(c)(2)-(4) and 483.25(h) during the relevant period." (Id. at 19.)  In reaching this conclusion, the DAB explicitly stated that it was "unnecessary for us to decide—and we do not decide—whether section [42 U.S.C. § 1395i-3(g)(2)(E)(i)] or the regulations in 42 C.F.R. Part 488 required NY[S]DOH to include a registered nurse on the September 2013 survey team, or whether a state survey agency has lawful 'discretion' to perform a survey without a registered nurse when the survey has been triggered by a 'complaint.'" (Id. at 10.)  On remand, CMS and Avon agreed to settle the administrative appeal and the ALJ dismissed the appeal on January 18, 2018. (Reinertsen Decl. ¶¶ 10, 12, Exs. A, C.)

On May 4, 2017, in response to the ALJ's decision, HHS published a proposed rule addressing, among other things, survey team composition.  See Survey Team Composition, 82 Fed. Reg. 21014, 21087-21088 (proposed May 4, 2017).  The proposed rule sought to relocate certain regulations and to revise definitions and other regulatory language to "clarify that the requirement for an interdisciplinary team that must include [a] registered nurse is applicable to surveys conducted under [42 U.S.C. § 1395i-3(g)(2) and 42 U.S.C. § 1396r(g)(2)] of the Act, and not to those surveys conducted to investigate complaints or to monitor compliance on-site under sections under [42 U.S.C. § 1395i-3(g)(4) and 42 U.S.C. § 1396r(g)(4)] of the Act."  Id. at 21016.  On August 4, 2017, HHS published the Final Rule without making any further changes. 82 Fed. Reg. at 36625.  The Final Rule became effective on October 1, 2017.  Id. at 36530.

Plaintiffs filed this action on March 16, 2018, arguing that the Final Rule is arbitrary, capricious, and contrary to the plain language of the Social Security Act.  Plaintiffs

seek vacatur of the Final Rule, a declaration that "all surveys conducted under [42 U.S.C. § 1395i-3(g) and 42 U.S.C. § 1396r(g)] of the Social Security Act must be performed by a survey team that includes at least one registered nurse," and injunctive relief prohibiting Defendant from conducting surveys at Plaintiffs' facilities with survey teams that do not contain at least one registered nurse. (See SAC at 18.)

DISCUSSION

On a motion pursuant to Federal Rule of Civil Procedure 12(b)(1), an action must be dismissed for lack of subject matter jurisdiction if the district court lacks the statutory or constitutional power to adjudicate the case. Makarova, 201 F.3d at 113. Where the defendant challenges the factual basis of jurisdiction, a district court may refer to evidence outside the pleadings. See id. Where, as here, a party also seeks a determination on the merits of its claim, the Court must first resolve the issues raised in the Rule 12(b)(1) motion. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

Defendant argues that the Court lacks subject matter jurisdiction of Plaintiffs' claims because Plaintiffs "failed to comply with the statutory scheme Congress has imposed on all claims that arise under the Medicare Act." (Docket entry no. 26 at 12.) Specifically, Defendant notes that Medicare Act section 1395cc(h)(1)(A) provides that any institution or agency "dissatisfied . . . with a determination described in subsection (b)(2) shall be entitled to a hearing . . . to the same extent as is provided" in 42 U.S.C. § 405(b), "and to judicial review of the [Secretary of Health and Human Services (the "Secretary's)] final decision after such hearing as is provided in" 42 U.S.C. § 405(g).[5] Defendant argues that, because Medicare Act section

---

[5] The cross-referenced subsection (b)(2) grants the Secretary power to terminate a nursing home's provider agreement if, for example, the Secretary has "determined" that "the

1395ii, by incorporating 42 U.S.C. § 405(h), bars jurisdiction under 28 U.S.C. § 1331 for claims "arising under" the Medicare Act that have not been presented and administratively exhausted before the Secretary, the Court lacks subject matter jurisdiction of this action, in which Plaintiffs mount a pre-enforcement attack in this Court on the new Final Rule.[6] Citing the United States Supreme Court's decision in Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000), Defendant contends that Plaintiffs' failure to channel their claim through the review process provided for by the Medicare Act in connection with enforcement proceedings deprives the Court of subject matter jurisdiction to consider their claim that the Final Rule is invalid.

In Illinois Council, the Supreme Court considered whether § 405(h), as incorporated into the Medicare Act by § 1395ii, bars federal-question jurisdiction of a pre-enforcement action brought by an association of nursing homes claiming that certain Medicare Part A regulations imposing non-compliance sanctions or remedies violated various statutory and constitutional requirements. 529 U.S. at 5-7. The Court observed that § 405(h), as interpreted by the Court's earlier decisions in Weinberger v. Salfi, 422 U.S. 749 (1975) and Heckler v. Ringer, 466 U.S. 602 (1984), "clearly bar[red]" the plaintiffs' pre-enforcement lawsuit. Id. at 11. The Court noted that, as interpreted in Salfi and Ringer, "the bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative

---

provider fails to comply substantially . . . with the provisions [of the Medicare Act] and regulations thereunder." 42 U.S.C. § 1395cc(b)(2). 42 U.S.C. § 405(b) describes the type of administrative hearing to which a dissatisfied party is entitled. 42 U.S.C. § 405(g) provides for judicial review of the Secretary's determinations "in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business."

[6] 42 U.S.C. § 405(h) provides, in relevant part, that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter."

remedies,'" and "demands the 'channeling' of virtually all legal attacks through the agency," thus "assur[ing] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying 'ripeness' and 'exhaustion' exceptions case by case." Id. at 12-13.  Discussing its more recent decision in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667 (1986), the Court declined to draw a distinction for jurisdictional purposes between "dispute[s] about an agency determination in a particular case and a more general dispute about, for example, the agency's authority to promulgate a set of regulations." Id. at 18.  Instead, the Court observed, "it is more plausible to read Michigan Academy as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." Id. at 19 (emphasis in original).  Relying in part upon representations made by the Secretary regarding the availability of a channel for administrative review of plaintiffs' claims, the Illinois Council Court concluded that plaintiffs were required to first present their claims to the agency and that, in the absence of such presentment and exhaustion, § 405(h) barred subject matter jurisdiction of plaintiffs' claims. Id. at 20-24.

Plaintiffs do not dispute that § 405(h) bars claims "where the Medicare Act's special judicial review channel permits consideration of a challenge, even if the agency itself cannot or will not consider that challenge." (Docket entry no. 37 at 17.)  Instead, Plaintiffs contend that their challenge to the Final Rule "cannot be redressed through the Medicare Act's post-enforcement judicial review provisions" because those provisions "do not allow courts to redress defects or illegalities in the survey process." (Id. at 18-19.)  In support of their argument, Plaintiffs point to the DAB Decision in Avon's administrative appeal, briefs submitted by the Defendant in connection with other administrative appeals, and various federal appellate court

decisions which hold that nursing homes may not escape responsibility for supported deficiencies on the basis of defects or other failures in the survey process. See, e.g., Rosewood Care Center of Swansea v. Price, 868 F.3d 605, 621 (7th Cir. 2018) (declining to vacate imposition of civil money penalties where nursing home argued that the state survey agency's investigation was inadequate). Plaintiffs argue that these determinations place their claims within the Michigan Academy exception to § 405(h)'s jurisdictional bar because they effectively amount to "no review at all." Plaintiffs also contend that, even if the Court lacks jurisdiction to adjudicate their claim under the Medicare Act, the Court still retains federal question jurisdiction of their claim under the Medicaid Act, which does not incorporate § 405(h) by reference.

Plaintiffs' arguments are unpersuasive and conflate their opportunity to obtain certain types of relief with the availability of judicial review. The decisions and briefs cited by Plaintiffs in support of their argument rely primarily upon 42 C.F.R. § 488.318(b), which provides that "[i]nadequate survey performance does not—(1) [r]elieve a [nursing facility] of its obligation to meet all requirements for program participation; or (2) [i]nvalidate adequately documented deficiencies." This regulation does not permit the agency to remedy a defect in the survey process by invalidating an otherwise properly supported noncompliance determination. However, it does not preclude the agency from addressing, in the first instance, a statutory challenge to a regulation that pertains to the survey process, such as the survey team composition requirements of the Final Rule.[7] As the Court in Illinois Council noted when dismissing claims

---

[7] As the DAB explained in its Decision, the purpose of 42 C.F.R. § 488.318(b) and other similar regulations is to ensure that properly substantiated violations are recognized and remedied, even when a surveyor does not follow every aspect of the survey protocol. DAB Decision at 12-14. Allowing facilities to seek invalidation of otherwise well-documented deficiencies on the basis of a defect in the survey process would, in CMS's view, "be surrendering all substance to form and would clearly thwart Congressional will." DAB Decision at 13 (quoting 59 Fed. Reg. at 56134).

that were substantially similar to those asserted by Plaintiffs here, "[t]he fact that the agency might not provide a hearing for [a] <u>particular contention</u>, or may lack the power to provide one, is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." 529 U.S. at 23 (internal citations omitted) (emphasis in original). Even where the agency does not rule on the contention that the Final Rule is inconsistent with the statute, "a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide." <u>Id.</u> Although Plaintiffs may not be able to obtain an invalidation of a properly supported noncompliance determination in a proceeding before the agency (relief which, in any event, Plaintiffs do not seek here), that limitation does not amount to a complete preclusion of judicial review.[8]

The Court is similarly unpersuaded that it has jurisdiction of Plaintiffs' claim under the Medicaid Act. As Defendant notes, the Medicare and Medicaid Acts impose substantially similar participation requirements with respect to dually-participating facilities like Plaintiffs', and fulfillment of a facility's obligations under one of the Acts satisfies its obligations under the other. <u>See</u> 42 U.S.C. § 1395i-3(a)-(d), (j); 42 U.S.C. § 1396r(a)-(d), (j); 42 C.F.R. § 488.452(e). Moreover, HHS regulations provide that a Medicaid nursing facility is subject to the Medicare administrative appeals procedures when it has agreed to participate in both programs

---

[8] The Court also notes that Plaintiffs' argument is inconsistent with the decisions of other courts that have adjudicated similar challenges only after the litigants had presented and administratively exhausted their claims with the agency. <u>See, e.g.,</u> <u>Beverly Health & Rehab. Servs., Inc. v. Thompson</u>, 223 F. Supp. 2d 73, 87, 90, 96 (D.D.C. 2002) (adjudicating challenge seeking invalidation of nursing home enforcement regulations and the standard survey protocol as violative of the Social Security Act, the APA, and the Fifth Amendment after finding that plaintiffs followed the special review channel created by the Medicare Act).

and is the subject of a compliance action by CMS. 42 C.F.R. § 498.4. Although § 405(h) has not been incorporated by reference into the Medicaid Act, courts have not interpreted this omission "as abrogating the doctrine of exhaustion of remedies in Medicaid cases" involving dually-participating facilities. Michigan Ass'n of Homes and Servs. For Aging, Inc. v. Shalala, 127 F.3d 496, 502-503 (6th Cir. 1997) (quoting Health Equity Res. Urbana, Inc. v. Sullivan, 927 F.2d 963, 967 (7th Cir. 1991)). In this context, courts have held that, "where a provider is dually certified and brings a claim that challenges determinations made under both the Medicare and Medicaid Acts, the provider cannot avoid the jurisdictional bar and administrative channeling of the Medicare Act simply by characterizing the claim as arising under the Medicaid Act." Cathedral Rock of North College Hill, Inc. v. Shalala, 223 F.3d 354, 367 (6th Cir. 2000); see also In re Bayou Shores, 828 F.3d 1297, 1330 (11th Cir. 2016) ("Allowing Bayou Shores to go forward with only its Medicaid claims would thus put the bankruptcy court in the untenable position of adjudicating a dispute fundamentally about Medicare laws and regulations . . . despite being barred from adjudicating Bayou Shores' Medicare claims."). The Court finds the reasoning of these decisions persuasive. Plaintiffs are dually-participating facilities whose challenge to the survey team composition requirements of the Final Rule implicates the same statutory language under both Acts, thus, given "[t]he similar structures of the two Acts, evasion concerns, and considerations of judicial economy and orderliness," Plaintiffs cannot assert an independent basis of jurisdiction under the Medicaid Act and must pursue their claim through administrative channels in the first instance. Michigan Association, 127 F.3d at 503.[9]

---

[9] The Court notes that the Seventh Circuit in Illinois Council on Long Term Care, Inc. v. Shalala, 143 F.3d 1072, 1074-75 (7th Cir. 1998) expressed disapproval of Michigan Association in the context of claims brought by Medicaid-only facilities under the Medicaid Act. However, because the Seventh Circuit did not consider claims asserted by

Because Plaintiffs have not demonstrated that their challenge to the Final Rule cannot be adjudicated by a district court after they have exhausted the HHS administrative process, the Court finds that § 405(h) deprives the Court of subject matter jurisdiction of Plaintiffs' claim.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction is granted, and the parties' respective cross-motions for summary judgment are denied as moot. The Clerk of Court is requested to enter judgment dismissing the Second Amended Complaint for lack of subject matter jurisdiction and to close this case. This Memorandum Opinion and Order resolves docket entry nos. 25, 31, and 39.

SO ORDERED.

Dated: New York, New York
September 24, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

dually-participating facilities under both statutes, the Court does not find the Seventh Circuit's reasoning in <u>Illinois Council</u> persuasive here.