UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

AVON NURSING AND REHABILITATION,
et al.,

                       Plaintiffs,

     -v-                                         No. 18-CV-2390-LTS-SDA

XAVIER BECERRA, in his capacity as the
Secretary of the United States Department
of Health and Human Services,

                       Defendant.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs, a group of skilled nursing facilities, bring this action against Defendant Xavier Becerra in his capacity as the Secretary of the United States Department of Health and Human Services ("HHS"), seeking review under the Administrative Procedure Act (5 U.S.C. §§ 701 et seq, ("APA")) of a 2017 rule promulgated by the Centers for Medicare and Medicaid Services ("CMS") division of HHS.  See Survey Team Composition, 82 Fed. Reg. 36530, 36623-36625 (Aug. 4, 2017) (the "Final Rule").  The Final Rule would permit certain inspections of nursing facilities to be conducted without the participation of a registered nurse. See id.  This case is now before the Court upon remand from a 2021 decision by the Second Circuit (see docket entry no. 64, Avon Nursing & Rehab. v. Becerra, 995 F.3d 305 (2d Cir. 2021)), which reversed and remanded this Court's 2019 Memorandum Opinion and Order dismissing the case for lack of subject matter jurisdiction (docket entry no. 61 ("the Opinion")).

Following the remand, Plaintiffs and Defendant filed cross-motions for summary judgment under Federal Rule of Civil Procedure 56, each arguing that they are entitled to judgment as a matter of law.  (Docket entry nos. 89 and 95.)  Plaintiffs ask that the Court vacate

the Final Rule, whereas Defendant asks that the Court uphold the Final Rule and affirm HHS's

interpretation of the statute.  The Court has jurisdiction of this action pursuant to 28 U.S.C.

section 1331.  The Court has considered the parties' submissions carefully and, for the following

reasons, grants Defendant's motion.

BACKGROUND

Much of the background of this case was laid out in this Court's prior Opinion;

the parties' familiarity with that decision is presumed.[1]  Plaintiffs are a group of nursing facilities

located in New York and Rhode Island, all of which participate in the Medicaid program.[2]  In

order to receive Medicaid funding, nursing facilities must remain in "substantial compliance"

with the program's participation requirements.  42 U.S.C. § 1396r(a)(3), § 1396r(h).  To evaluate

such compliance, facilities are subject to onsite inspections (called "surveys") conducted by state

health agencies,[3] which aim to "assess [the facilities'] compliance with Federal health, safety,

and quality standards."  42 C.F.R. § 488.26(c)(1).  These surveys—and the statutes and

regulations governing them—are the focus of the parties' dispute in this matter.

---

[1]     Any facts discussed in this opinion are undisputed unless otherwise indicated.  Facts
        characterized as undisputed are identified as such in the parties' statements pursuant to
        S.D.N.Y. Local Civil Rule 56.1, or drawn from evidence as to which there has been no
        contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil
        Rule 56.1 Statements incorporate by reference the parties' citations to underlying
        evidentiary submissions.

[2]     Medicaid is a state-administered federal program that provides payments for medical care
        to certain low-income individuals.  See 42 U.S.C. § 1396d(a).

[3]     The states conduct surveys of facilities by agreement with HHS. 42 U.S.C.
        § 1396r(g)(1)(A).

The statutory scheme governing surveys is set out in 42 U.S.C. § 1396r(g).[4]

Section 1396r(g) sets out a variety of survey types,[5] and also describes (inter alia) the timing,

content, and frequency of such surveys.  Surveys are conducted by a survey team, selected by the

state, which is tasked with identifying violations.  See 42 C.F.R. § 488.402(b); § 488.10(a).

Nursing facilities with poor survey results may be subjected to sanctions (known as

"remedies")—ranging from civil monetary penalties, to loss of Medicaid funding, to closure of

the facility.  See 42 C.F.R. § 488.406.  A facility that is dissatisfied with its survey results may

contest that determination by appealing to an Administrative Law Judge ("ALJ") (see 42 C.F.R.

§ 498.5; 42 C.F.R. § 488.408((g)), and the ALJ's decision can subsequently be appealed to the

Appellate Division of the Departmental Appeals Board ("DAB") (42 C.F.R. § 498.80).

        The dispute now before the Court finds its origins in an administrative proceeding

relating to an incident at a nursing home.  In August 2013, Plaintiff Avon Nursing and

Rehabilitation ("Avon") reported to the New York State Department of Health ("NYSDOH")

that a resident had spilled a bowl of soup on her lap during dinner, resulting in a burn.  (Opinion

at 4.)  In response to that report, NYSDOH conducted an "abbreviated standard survey" at

Avon's facility, using a survey team composed of two dieticians, neither of whom was a

registered nurse.  (Id., docket entry no. 76 ¶ 94.)  The survey team concluded, and CMS agreed,

that Avon was not in substantial compliance with two participation requirements.  (Opinion at 4-

---

[4]     42 U.S.C. section 1396r codifies section 1919 of the Social Security Act.

[5]     For example, an "annual standard survey" is a wide-ranging inspection of a facility,
        conducted "without prior notice," that seeks to survey the "quality of care furnished."  42
        U.S.C. § 1396r(g)(2)(A).  An "extended survey" is triggered when a facility performs
        poorly on a standard survey, and seeks to "review and identify the policies and procedure
        which produced [the] substandard quality of care."  Id. § 1396r(g)(2)(B).  A "validation
        survey" is conducted by HHS itself (as opposed to the state agencies) in order to test
        whether the state is "perform[ing] surveys as required."  Id. § 1396r(g)(3).

5.)  CMS imposed a civil monetary penalty, which Avon then appealed to an ALJ.  (Id. at 5.)  In

August 2016, the ALJ issued a decision finding that NYSDOH had violated Medicaid

requirements[6] by failing to include a registered nurse on the survey team that inspected Avon's

facility, and that the penalty imposed on Avon was consequently invalid.  (Id.)  CMS appealed

the ALJ's decision to the DAB, which held that the composition of the survey team was not a

proper basis for invalidation of the penalty, and vacated the ALJ's decision and remanded the

matter in November 2017 for further proceedings on the merits.  (Id. at 5-6.)  The parties

eventually settled the administrative proceeding in January 2018.  (Id. at 6.)

On May 4, 2017, in response to the ALJ's 2016 decision, HHS published a new

proposed rule addressing, among other things, survey team composition.  See Survey Team

Composition, 82 Fed. Reg. 21014, 21087-21088 (proposed May 4, 2017).  The proposed rule

sought to relocate certain regulations and to revise definitions and other regulatory language in

order to "clarify that the requirement for an interdisciplinary team that must include [a]

registered nurse is applicable to surveys conducted under [42 U.S.C. § 1395i-3(g)(2) and 42

U.S.C. § 1396r(g)(2)] of the Act, and not to those surveys conducted to investigate complaints or

to monitor compliance on-site under sections [42 U.S.C. § 1395i-3(g)(4) and 42 U.S.C. §

1396r(g)(4)] of the Act."  Id. at 21016.  In other words, the Final Rule provided that nursing

facility compliance surveys conducted pursuant to 42 U.S.C. § 1396r(g)(2) ("Surveys") must be

conducted by a team that includes a registered nurse; and that investigative surveys conducted

---

[6]     Specifically, the ALJ concluded that the state agency had violated 42 U.S.C. § 1395i-
3(g)(2)(E)(i) of the Social Security Act—which states that "[s]urveys under this
subsection shall be conducted by a multidisciplinary team of professionals (including a
registered professional nurse)"—and 42 C.F.R. § 488.314(a)(1)—which states that
"[s]urveys under sections 1819(g)(2) and 1919(g)g(2) of the Social Security Act must be
conducted by an interdisciplinary team of professionals, which must include a registered
nurse."  (Opinion at 5.)

pursuant to 42 U.S.C. § 1396r(g)(4) ("Investigation of complaints and monitoring nursing

facility compliance") are not subject to the registered nurse requirement but instead may be

conducted by a specialized team that "may" include "appropriate health care professionals."  See

id. [7]  On August 4, 2017, HHS published the Final Rule without making any further changes.  82

Fed. Reg. at 36625.  The Final Rule became effective on October 1, 2017.  Id. at 36530.

Plaintiffs filed this action in March 2018, challenging the Final Rule as arbitrary

and capricious, and contending that it is contrary to the plain language of the Social Security

Act's Medicare and Medicaid facility compliance provisions.  (Docket entry no. 1.)  Plaintiffs

sought vacatur of the Final Rule, as well as declaratory and injunctive relief.  (Id.)  In September

2018, Defendant moved to dismiss the complaint for lack of subject matter jurisdiction (docket

entry no. 25), and the parties simultaneously cross-moved for summary judgment (docket entry

nos. 31, 39).  The Court issued its Opinion in September 2019, granting Defendant's motion to

dismiss the complaint for lack of jurisdiction, holding that Plaintiffs had failed to exhaust their

administrative remedies with HHS.  (Opinion at 8-13.)  On appeal, the United States Court of

Appeals for the Second Circuit held that the Medicaid portion of the statute is not subject to the

---

[7]      In order to effectuate this clarification, the Rule made four specific changes to the
         Medicaid/Medicare regulations governing "Survey, Certification, and Enforcement
         Procedures."  (42 C.F.R. § 488 et seq).  Specifically, the Rule "(a) Proposed revision of
         the definition of 'complaint survey' under § 488.30 to add a provision stating that the
         requirements of sections 1819(g)(4) and 1919(g)(4) of the Act and § 488.332 apply to
         complaint surveys[,] (b) Proposed revision of the definition of 'abbreviated standard
         survey' under § 488.301 to clarify that abbreviated standard surveys conducted to
         investigate a complaint or to conduct on-site monitoring to verify compliance with
         participation requirements are subject to the requirements of § 488.332[,] (c) Proposed
         relocation of the requirements included in § 488.308(e)(2) and (3) related to surveys
         conducted to investigate a complaint from under the heading 'Special Surveys' to a new
         paragraph (f), titled 'Investigations of Complaints[,]' [and] (d) Proposed revision of the
         language at § 488.314(a)(1) to specify that the team composition requirements at
         § 488.314(a)(1) apply only to surveys under sections 1819(g)(2) and 1919(g)(2) of the
         Act."  82 Fed. Reg. at 36624.

administrative exhaustion requirement and that, accordingly, jurisdiction did exist as to

Plaintiffs' claims arising under the Medicaid Act.  See Avon Nursing, 995 F.3d at 310-15.  The

Second Circuit reversed the Opinion and remanded this case for further proceedings on the

merits of Plaintiffs' claims arising under the Medicaid statutory provisions.  Id.

On remand, Plaintiffs filed a Third Amended Complaint seeking APA review of

the Final Rule, asserting that the Final Rule contravenes the plain language of the Medicaid Act

by altering the requirements for survey team composition.  (Docket entry no. 76.)  The parties

cross-moved for summary judgment on updated papers (docket entry nos. 89 and 95), and the

case is now ripe for a determination on the merits.

DISCUSSION

The parties move for summary judgment pursuant to Rule 56(a) of the Federal

Rules of Civil Procedure.  Summary judgment is warranted when the movant shows that there is

no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "When 'a

party seeks review of agency action under the APA . . . the entire case on review is a question of

law.'"  New York v. Scalia, 490 F. Supp. 3d 748, 765 (S.D.N.Y. 2020) (citation omitted).

"[S]ummary judgment is appropriate in APA cases because the questions on review are purely

legal and are amenable to summary disposition."  R.F.M. v. Nielsen, 365 F. Supp. 3d 350, 360

(S.D.N.Y. 2019) (internal quotation marks and citation omitted).  "Under the APA, courts review

issues of law de novo."  Id. (citing 5 U.S.C. § 706).

The question before the Court here is one of statutory construction—Plaintiffs

assert that the Final Rule conflicts with the Medicaid Act (and is therefore invalid), while

Defendant asserts that the Final Rule is a reasonable and permissible interpretation of the

Medicaid Act which is entitled to deference.  Courts evaluate such a challenge to an agency's

interpretation of a statute that it administers under the two-step framework that was established

by the Supreme Court in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837

(1984).  See Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA, 846 F.3d 492, 507 (2d

Cir. 2017).  At Chevron Step One, the court must discern "whether Congress has directly spoken

to the precise question at issue"—and if "the intent of Congress is clear, that is the end of the

matter," because the court must "give effect to the unambiguously expressed intent of Congress."

Id.  (quoting Chevron, 467 U.S. at 842-43).  "If the statutory language is 'silent or ambiguous,'

however, … [the court proceeds] to Chevron Step Two, where 'the question for the court is

whether the agency's answer is based on a permissible construction of the statute' at issue."  Id.

(citing Chevron, 467 U.S. at 843).


Chevron Step One – Is the Congressional Intent Clear?

        Chevron Step One requires the Court to determine whether the statute is

ambiguous as to the composition of a survey team that reviews complaints regarding a Medicaid

participating facility—i.e., whether "the language at issue has a plain and unambiguous

meaning."  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 108 (2d Cir. 2012).

"The plainness or ambiguity of statutory language is determined by reference to the language

itself, the specific context in which that language is used, and the broader context of the statute

as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).  A court should consider "not

only the bare meaning of the word but also its placement and purpose in the statutory scheme"

because the "meaning of statutory language, plain or not, depends on context."  Bailey v. United

States, 516 U.S. 137, 145 (1995) (citation omitted). "A provision that may seem ambiguous in

isolation is often clarified by the remainder of the statutory scheme—because the same

terminology is used elsewhere in a context that makes its meaning clear, or because only one of

the permissible meanings produces a substantive effect that is compatible with the rest of the

law." <u>Koons Buick Pontiac GMC, Inc. v. Nigh</u>, 543 U.S. 50, 60 (2004) (citation omitted).

Potential ambiguities can also be resolved with the aid of canons of construction, which "have

been characterized as 'guides' that are 'designed to help judges determine the Legislature's

intent as embodied in particular statutory language.'" <u>In re Lucarelli</u>, 517 B.R. 42, 51 (Bankr. D.

Conn. 2014) (quoting <u>Chickasaw Nation v. United States</u>, 534 U.S. 84, 94 (2001)).  Canons

provide a useful "tool for choosing between competing plausible interpretations of a statutory

text[.]" <u>Clark v. Martinez</u>, 543 U.S. 371, 381 (2005).

   The relevant portion of the Medicaid Act here is 42 U.S.C. section

1396r(g)(2)(E)(i)—also known as the "registered nurse clause"—which provides that "[s]urveys

under <u>this subsection</u> shall be conducted by a multidisciplinary team of professionals (including

a registered professional nurse)."  42 U.S.C. § 1396r(g)(2)(E)(i) (emphasis added).  The parties

offer competing interpretations of the term "this subsection," each contending that the reference

to "this subsection" is intended to refer to a different portion of the statute.  To provide further

context to the parties' arguments, it may prove helpful to first review the general structure of

section 1396r(g), which is organized (in relevant part) as follows:

**(g) Survey and certification process**
  **(1) State and Federal responsibility** . . .
  **(2) Surveys**
    (A) Annual standard survey . . .
    (B) Extended surveys . . .
    (C) Survey protocol . . .
    (D) Consistency of surveys . . .
    (E) Survey teams

> (i) In general
>
> > Surveys **under this subsection** shall be conducted by a multidisciplinary team of professionals (including a registered professional nurse).
> >
> > . . .
>
> **(3) Validation surveys** . . .
>
> **(4) Investigation of complaints and monitoring nursing facility compliance**
> > Each state shall maintain procedures and staff adequate to--
> > (A) investigate complaints of violations of requirements by nursing facilities, and
> > (B) monitor, on-site, on a regular, as needed basis, a nursing facility's compliance with the requirements of subsections (b), (c), and (d), if--
> >
> > > . . .
> > > (iii) the State has reason to question the compliance of the facility with such requirements.
> > > A state **may** maintain and utilize a specialized team (**including** an attorney, an auditor, and **appropriate health care professionals**) for the purpose of identifying, **surveying**, gathering and preserving evidence, and carrying out appropriate enforcement actions against substandard nursing facilities.
>
> **(5) Disclosure of results of inspections and activities** . . .

42 U.S.C. § 1396r(g) (emphasis added).

Plaintiffs assert that, as used in section 1396r(g)(2)(E)(i), the term "this subsection" refers to *subsection (g) as a whole*, meaning that every single type of survey described in subsection (g) would be subject to the registered nurse clause—including annual surveys (under § (g)(2)(A)); extended surveys (under § (g)(2)(B)); validation surveys (under § (g)(3)); and surveys in connection with complaint investigations (under § (g)(4)).  Defendant argues that, as used in section 1396r(g)(2)(E)(i), the term "this subsection" refers to *only to subsection (g)(2),* meaning that only the surveys specifically conducted pursuant to subsection

(g)(2)[8] would require the participation of a registered nurse.  Thus, annual surveys (under

§ (g)(2)(A)) and extended surveys (under § (g)(2)(B)) would be subject to the registered nurse

clause, but surveys in connection with complaint investigations (under § (g)(4)) would not be.

Faced with these conflicting interpretations, the Court must first determine

whether the term "this subsection" is ambiguous, taking into account the language used, the

placement of the language, and the context of the statutory scheme as a whole.   Plaintiffs'

primary argument in support of their interpretation is based on the conventional use of the term

"subsection" in the hierarchical scheme that Congress often employs when drafting statutes.  The

Supreme Court has recognized that "Congress often drafts statutes with hierarchical schemes—

section, subsection, paragraph, and on down the line."  N.L.R.B. v. SW Gen., Inc., 580 U.S. 288,

300 (2017).  "This hierarchy is set forth in drafting manuals prepared by the legislative counsel's

offices in the House and the Senate."  Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60

(2004).  Plaintiffs cite the drafting manual of the Senate Office of Legislative Counsel, which

explains that

> A section is subdivided and indented as follows:
> (a) Subsection.—
> > (1) Paragraph.—
> > > (A) Subparagraph.—
> > > > (i) Clause.—
> > > > > (I) Subclause.—

Senate Office of the Legislative Counsel, Legislative Drafting Manual, at 10 (1997).

---

[8]    Validation surveys under subpart (g)(3) of the statute are subject to the same rules as surveys under (g)(2).  Subsection (g)(3) provides that, "[i]n conducting such surveys [i.e., (g)(3) surveys], the Secretary shall use the same survey protocols as the State is required to use under paragraph [(g)](2)."  42 U.S.C. § 1396r(g)(3)(A).

Under this traditional hierarchical structure, Plaintiffs explain, 42 U.S.C.

§ 1396r(g) would constitute a *subsection*, while 42 U.S.C. § 1396r(g)(2) would constitute a

*paragraph*.  Thus, if this hierarchical scheme had been followed, the term "this subsection" as

used in the registered nurse clause would refer to subsection (g) as a whole; and Defendant's

proposed interpretation would fail—because subsection (g)(2) would not properly be referenced

as a "subsection" at all, but would be a "paragraph."  Plaintiffs assert that this common

hierarchical meaning of the term "subsection" should prevail because it is the most natural

reading of this language and because, if Congress had intended the registered nurse clause to

refer to a smaller statutory subdivision (such as paragraph (g)(2)), Congress would simply have

used the words "this paragraph" when drafting the registered nurse clause.  See, e.g., Cyan, Inc.

v. Beaver Cnty. Emps. Ret. Fund, 138 S. Ct. 1061, 1070 (2018) (rejecting the plaintiff's attempt

to "cherry pick from the material covered by the statutory cross-reference" because the relevant

clause "points to section 77p as a whole—not to paragraph 77p(f)(2)," and because "when

Congress wants to refer only to a particular subsection or paragraph, it says so") (citations and

alterations omitted).

Defendant notes, however, that there are many indications that Congress chose

*not* to follow this traditional hierarchical scheme when drafting the Medicaid Act.  Defendant

points out that the term "subsection" is used dozens of times throughout the Medicaid Act, often

in a loose and imprecise manner, to reference a wide variety of levels of statutory hierarchy.

Indeed, it appears that the Medicaid Act uses the word "subsection" as a shorthand/catchall term

for many different internal cross-references, even when the statutory subdivision in question

would technically be denominated a paragraph, subparagraph, clause, etc., under the standard

hierarchy.  Significantly, the subdivision at issue here—section 1396r(g)(2)—is referred to by

other provisions of the statute as "subsection (g)(2)."   See 42 U.S.C. § 1396r(h)(1) (referring to

"a standard, extended, or partial extended survey under *subsection (g)(2)*" (emphasis added)); see also 42 U.S.C. § 1396r(h)(2)(D) (referring to "standard surveys conducted under *subsection (g)(2)*") (emphasis added).  In another location, the statute references a "survey of the facility conducted under *subsection (g)*"—referring to a subsection by its technically proper name.  42 U.S.C. § 1396r(c)(8) (emphasis added); see also 42 U.S.C. § 1396r(b)(3)(B)(iii) (referencing "a survey under *subsection (g)*") (emphasis added).  In another location, the statute references a State's obligation to "monitor the facility under *subsection (g)(4)(b)*"—essentially referring to what the standard hierarchical scheme would label a subparagraph as a subsection.  42 U.S.C. § 1396r(h)(2)(D)(ii) (emphasis added); see also 42 U.S.C. § 1396r(e)(2)(B) (referencing survey "findings by a State under *subsection (g)(1)(C)*") (emphasis added).  Notably, nowhere does the Medicaid Act refer to (g)(2) as a "paragraph."

Based on the actual language of the statute at issue, the Court concludes that the legislative drafting hierarchy cited by Plaintiffs is not determinative of the meaning of the term "this subsection" as used in the registered nurse clause.  It is clear that the Medicaid Act uses the term "subsection" in an imprecise manner, to refer to a variety of different statutory subdivisions. While it is true that Congress "often drafts statutes" using the conventional hierarchical scheme, NLRB, 580 U.S. at 300, Plaintiffs have made no showing that this same hierarchical scheme is used in *every* statute, or that the drafters of the Medicaid Act intended for this scheme to apply to *this particular statute*.  After all, "[s]tatutory language has meaning only in context."  Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 415 (2005).

Indeed, in cases in which courts have relied on this this hierarchical scheme as an interpretive aid, the analysis centers on whether the particular statute at issue utilized that scheme, and does not offer broad generalizations about how every federal statute is structured. See, e.g. Koons, 543 U.S. at 60-62 (concluding that "Congress followed this hierarchical scheme

in drafting TILA" because an examination of the statute as a whole showed that Congress consistently used the terms "subparagraph" and "clause" with their conventional meanings); Perry v. First Nat. Bank, 459 F.3d 816, 820 (7th Cir. 2006) (concluding that "Congress used these standard [hierarchical] designations" in drafting the statute at issue, because "sections . . . are referred to as 'Sections'" and because the statute "uses the phrase 'this subsection' consistently" with the same meaning); McCane v. Am.'s Credit Jewelers, Inc., No. CIV.A.05-C-5089, 2005 WL 3299371, at *3 (N.D. Ill. Dec. 1, 2005) (concluding that the hierarchical scheme was "precisely the scheme Congress used to draft both the FCRA and the FACTA" because an examination of the statute as a whole showed that "Congress carefully identified the various parts of [the statute] by using the terms 'section,' 'subsection,' and 'paragraph'" with their conventional meanings).  Here, by contrast, an examination of the Medicaid Act as a whole shows the opposite—that Congress did not use the term "subsection" with its conventional meaning, and that the meaning of this term varies throughout the statute based on context.  Such variation in the meaning of a term is not uncommon in federal statutes.  See, e.g., Graham, 545 U.S. at 418 (recognizing that "Congress used the term 'action under section 3730' imprecisely" throughout the statute, with different meanings applicable in different portions); Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) ("It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance.").

There are several other indications in the structure of the statute that Congress used "this subsection" in the registered nurse clause to only refer to § 1396r(g)(2).  Subsection (g) is broken into five components, each with a distinct purpose: (g)(1) addresses the responsibilities of state and federal governments with respect to surveys; (g)(2) addresses rules

applicable to annual and extended surveys; (g)(3) addresses rules applicable to validation

surveys; (g)(4) addresses the investigation of complaints made about a facility; and (g)(5)

addresses governmental disclosure obligations regarding survey results.  See 42 U.S.C. §

1396r(g)(1)-(5).  The content and title of (g)(4) are notably different from those of the two other

subsections relating to the conduct of surveys—(g)(2) is entitled "Surveys"; and (g)(3) is entitled

"Validation surveys"; while (g)(4) is entitled "Investigation of complaints and monitoring

nursing facility compliance."  42 U.S.C. § 1396r(g)(2)-(4).  This suggests a congressional intent

to set apart (g)(4) investigations from other surveys.  See Fla. Dep't of Revenue v. Piccadilly

Cafeterias, Inc., 554 U.S. 33, 47 (2008) (finding a subchapter heading title to be "informative" in

a statutory construction inquiry because "statutory titles and section headings are tools available

for the resolution of doubt about the meaning of a statute") (internal quotation marks and citation

omitted).

        Another indication that (g)(4)'s procedures are distinct from those covered by the

immediately preceding subdivisions is that (g)(4) contains its own unique clause describing the

composition of teams, which is at odds with the registered nurse clause of (g)(2).  The (g)(4)

clause provides that "[a] State *may maintain and utilize* a specialized team (including an

attorney, an auditor, and appropriate health care professionals) for the purpose of identifying,

surveying, gathering and preserving evidence, and carrying out appropriate enforcement actions

against substandard nursing facilities."  42 U.S.C. § 1396r(g)(4)(B)(iii) (emphasis added).  In

contrast, the registered nurse clause (under (g)(2)) provides that "[s]urveys under this subsection

*shall be conducted* by a multidisciplinary team of professionals (including a registered

professional nurse)."  42 U.S.C. § 1396r(g)(2)(E)(i) (emphasis added).

        The contrasting use of the permissive "may" in (g)(4) and the mandatory "shall"

in (g)(2) shows that these two subdivisions establish distinct specifications for team composition.

See Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 156 (2d Cir. 2003) ("[W]hen the same [statute] uses both 'may' and 'shall', the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." (citation omitted)).  The statutory language indicates that a state *must* have a team that includes a registered nurse for surveys conducted under (g)(2), whereas a state merely *may* establish a team, which can include "appropriate healthcare professionals," for investigations conducted under (g)(4).  "The Supreme Court has 'caution[ed] against ignoring contexts in which Congress' use of the permissive 'may' contrasts with the legislators' use of a mandatory 'shall' in the very same section,'" because a statute's "uses of both 'may' and 'shall' demonstrate that its drafters were well aware of the difference between permissive and mandatory determinations and how to provide for each of them when drafting the [statute's] text.'"  Yoo v. United States, 43 F.4th 64, 74 (2d Cir. 2022) (citations omitted).

The lack of ambiguity concerning the applicability of the registered nurse clause is also confirmed by reference to the canons of statutory construction—most notably, the canon against surplusage.  Under the surplusage canon, "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  Duncan v. Walker, 533 U.S. 167, 174  (2001) (citation omitted).  This canon is particularly useful when a court is faced with two competing statutory interpretations—one of which would render a certain provision superfluous; and another "competing interpretation [which would] give[] effect to every clause and word of a statute."  Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 106 (2011) (internal quotation marks and citation omitted).  Here, if Plaintiffs' interpretation of the registered nurse clause were accepted (and all survey/investigation teams under subsection (g) were required to include a registered nurse), it would render (g)(4)'s permissive staffing requirements to be superfluous—after all, why provide

that states *may* utilize teams that include a healthcare professional (§ 1396r(g)(4)(B)(iii)), if all

such teams are *already required* to include a registered professional nurse by another portion of

the statute (§ 1396r(g)(2)(E)(i))?  The correct reading of the registered nurse clause (interpreting

it as applicable only to (g)(2)) avoids this uneasy discrepancy between (g)(2) and (g)(4), gives

effect to each portion of the statute, and harmonizes all of the various provisions.  See Food &

Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (courts should

interpret a statute "as a symmetrical and coherent regulatory scheme and fit, if possible, all parts

into a harmonious whole") (internal quotation marks and citations omitted).[9]

      Accordingly, the Court concludes that the registered nurse clause is unambiguous.

It requires the participation of a registered nurse only in those surveys conducted pursuant to 42

U.S.C. section 1396r(g)(2), and does not impose this requirement in connection with complaint

investigations arising under section 1396r(g)(4).  The Court must give effect to the

unambiguously expressed intent of Congress, and Defendant is thus entitled as a matter of law to

summary judgment dismissing Plaintiffs' challenge of the Final Rule.

Chevron Step Two – Is the Agency's View Reasonable?

      Because the Court has concluded that the statutory language is unambiguous, it is

not necessary to resort to Chevron Step Two.  If a Chevron Step Two analysis were nonetheless

undertaken, however, the Secretary would still be entitled to summary judgment dismissing

Plaintiffs' claims of invalidity.  Under Chevron Step Two, when a statute "leaves a 'gap' or is

---

[9]    Although Plaintiffs contend that the legislative history of the Medicaid Act supports their interpretation, the Court declines to address the proffered legislative history, having determined that any ambiguity in the statutory text is resolved by the canons of statutory construction.  See United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016) ("[A court may] resort to legislative history only if, after consulting canons of statutory instruction, the meaning remains ambiguous.").

ambigu[ous], [courts] typically interpret it as granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute." Cuozzo Speed Techs., LLC v. Lee, 579 U.S. 261, 276 (2016) (citation omitted).  A court should "not disturb an agency rule at Chevron Step Two unless it is arbitrary or capricious in substance, or manifestly contrary to the statute." Catskill, 846 F.3d at 520 (internal quotation marks and citation omitted).  "The agency's view need not be the only possible interpretation, nor even the interpretation deemed most reasonable by the courts"—so long as the rule is a "reasonable interpretation of the enacted text" which is "supported by valid considerations," it should receive deference.  Id. at 501, 520 (internal quotation marks and citations omitted).

Defendant's interpretation is certainly reasonable enough to clear this threshold. As explained above, the Final Rule, which does not require the participation of a registered nurse in a survey conducted in connection with a complaint investigation pursuant to section 1396r(g)(4) of the statute, is wholly consistent with the language of the Medicaid Act. Moreover, Defendant has provided a valid rationale in support of the Final Rule—namely, affording state agencies more flexibility in their staffing decisions so that they can save resources and perform their duties more efficiently by only including necessary staff members on teams. For example, Defendant notes that state agencies receive a wide variety of complaints regarding nursing facilities—some of which involve health or medical issues, but some of which do not (e.g., complaints about a broken heater, or poor food quality)—and that in many such cases the skills of a registered nurse are not necessary.  (See docket entry no. 96, at 7-8, 20.)  As noted in the official commentary accompanying the Final Rule, the interpretation embodied in the Final Rule enables HHS "to determine which professional would be most appropriate [on a team] to investigate complaint allegations based on the nature of the complaint allegation received." See Final Rule at 36625.  In contrast, if HHS "were to require a registered nurse on all surveys

including those that are meant to investigate complaint allegations, it would place an undue

burden on the resources of state survey agencies" by mandating inefficient staffing requirements.

See Final Rule at 36625.

Plaintiffs, however, assert that the Final Rule is an unreasonable interpretation of

the statute which contains a "fatal flaw." (See docket entry no. 101, at 7-10.)  Plaintiffs argue

that, because (1) the Final Rule provides that a complaint can only trigger two types of surveys (a

standard or abbreviated standard survey); (2) these two survey types are referred to in

subdivision (g)(2) of the statute; and (3) all (g)(2) surveys require a registered nurse; (4) all

surveys, including those that are triggered by a complaint, are subject to the registered nurse

clause under (g)(2).

The Court is not persuaded by Plaintiffs' argument, and finds that there is no such

inconsistency or "fatal flaw" in the Final Rule.  As Defendant correctly notes, Plaintiffs' logic

appears to be based on a misunderstanding of the breadth of the term "abbreviated standard

survey"—a term which *is not expressly defined in the statute*, and for which the regulations

provide greater context.  The statute only mentions abbreviated standard surveys once, stating

that "a standard survey (or an abbreviated standard survey) may be conducted within 2 months of

any change of ownership, administration, management of a nursing facility, or director of

nursing in order to determine whether the change has resulted in any decline in the quality of

care furnished in the facility."  42 U.S.C. § 1396r(g)(2)(A)(iii)(II).  The regulations, in contrast,

explain the reach of the term, stating that an abbreviated standard survey "means a survey other

than a standard survey that gathers information primarily through resident-centered techniques

on facility compliance with the requirements for participation," and that such a survey "may be

premised on complaints received; a change of ownership, management, or director of nursing; or

other indicators of specific concern."  42 C.F.R. § 488.301.

In other words, while the statute does not expressly define an abbreviated standard survey and only mentions *one ground that may trigger* such surveys (e.g., a change in facility ownership), the regulations explain that other circumstances could *also* trigger an abbreviated standard survey (e.g., a change in facility ownership, a complaint, or other general indicators of concern).  Under the agency's interpretation, therefore, abbreviated surveys *premised on a change in facility ownership* will fall under (g)(2) (and thus be subject to the registered nurse clause), but abbreviated surveys *premised on receipt of a complaint* will, like other surveys triggered by complaints, fall under (g)(4) (and thus not be subject to the registered nurse clause).  Indeed, language added by the Final Rule makes this clear, providing that "[a]bbreviated standard surveys conducted to investigate a complaint or to conduct on-site monitoring to verify compliance with participation requirements are subject to the requirements of § 488.332 [the flexible-staffing clause],"[10] while "[o]ther premises for abbreviated standard surveys would follow the requirements of § 488.314 [the registered nurse clause]."[11]  See 42 C.F.R. § 488.301.  The Court is accordingly unpersuaded by Plaintiffs' attempt to find inconsistencies in the Final Rule.  The Final Rule is consistent and reasonable and must be afforded deference under the Chevron framework.

---

[10]   42 C.F.R. § 488.332 sets out the rules applicable to the "Investigation of complaints of violations and monitoring of compliance," and provides a permissive staffing requirement for such investigations.  See 42 C.F.R. § 488.332(c) ("A state may use a specialized team, which may include an attorney, auditor and appropriate health care professionals, to identify, survey, gather and preserve evidence, and administer remedies to noncompliant facilities.").

[11]   42 C.F.R. § 488.314 sets out the rules applicable to "Survey teams," and provides a mandatory staffing requirement stating that "[s]urveys under [§ 1396r(g)(2)] must be conducted by an interdisciplinary team of professionals, which must include a registered nurse."  See 42 C.F.R. § 488.314(a)(1).

In sum, the Court concludes that Plaintiffs' challenge to the Final Rule is meritless because the language, structure, and context of the Medicaid Act all demonstrate that the statute's language is unambiguous, and that Congress clearly intended to require the presence of a registered nurse *only* on those surveys arising under 42 U.S.C. § 1396r(g)(2).  In the alternative, even if the statutory language were deemed ambiguous, the Final Rule represents a reasonable interpretation of the statute and is entitled to <u>Chevron</u> deference.

CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment is granted, and Plaintiffs' motion for summary judgment is denied.  The Clerk of Court is respectfully directed to enter judgment dismissing the complaint.

This Memorandum Opinion and Order resolves docket entry nos. 89 and 95.

SO ORDERED.

Dated: March 31, 2023
       New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge